# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS FERNANDES and JEAN NEIMILLER,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF JERSEY CITY, STEVEN M. FULOP, ANTHONY B. LEWIS, JOHN AND JANE DOES (1-20), and ABC CORPORATIONS (1-20),<br><br>　　　　Defendants. | Civ. No. 2:16-cv-07789-KM-JBC<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Plaintiffs Carlos Fernandes and Jean Neimiller brought this action against the City of Jersey City, Steven M. Fulop, and Anthony B. Lewis. The original complaint alleged that the plaintiffs obtained a construction permit and began remodeling work on their home, but the City halted the work, saying that plaintiffs had not obtained a required permit from the Historic Preservation Committee. Since siding had already been removed from the home, it suffered weather damage in the ensuing months. When Fernandes complained about the situation, City officials alleged defamed and falsely arrested him.

Defendants moved to dismiss the original complaint. I dismissed plaintiffs' defamation and negligence claims; the rest of the complaint survived. Plaintiffs then filed an amended complaint, which reasserts the defamation claim and reformulates their tort claim under New Jersey state law. Now before the court is defendants' motion to dismiss those two amended claims. (ECF no. 23).

1

I.  **BACKGROUND**[1]

   **A. Plaintiffs' Interrupted Remodeling Efforts**

Plaintiffs Carlos Fernandes and Jean Neimiller are a married couple who own and reside at a home (the "Property") located in the West Bergen–East Lincoln Park Historic District neighborhood of Jersey City, New Jersey. (1AC ¶¶ 1, 16). Fernandes has worked as an artist, design professional, and stylist. (1AC ¶ 13). Since moving to Jersey City many years ago, he has maintained many of his New York City clients and developed new ones. (1AC ¶ 14). He works with clients from the first floor of the Property, providing hair styling, makeup, and design consultations. (1AC ¶ 14).

The three named defendants are the City of Jersey City ("Jersey City" or the "City"), Steven M. Fulop, the Mayor of Jersey City, and Anthony B. Lewis, a sergeant in the Jersey City Police Department. (1AC ¶¶ 2, 6-7).

On or around July 20, 2015, Power Home Remodeling Group, Inc. ("Power HRG"), a remodeling contractor, applied to the Building Department for a permit to remove wood siding and install vinyl siding on plaintiffs' Property. (1AC ¶ 19). On August 1, 2015, pursuant to a Jersey City Ordinance, plaintiffs' neighborhood became a newly designated historic district. (1AC ¶¶ 16-17).

---

[1] For purposes of this motion to dismiss, the allegations of the First Amended Complaint are taken as true. Citations to certain record items are abbreviated as follows:

Compl. = Complaint (ECF No. 1)

1AC = First Amended Complaint (ECF No. 20)

Def. Br. = Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Counts IV and V of Plaintiffs' First Amended Complaint (ECF No. 23)

Pl. Br. = Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Counts IV and V of Plaintiffs' First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 24)

Feb. 8 Letter = Plaintiffs' February 8, 2016 Letter to Corporation Counsel (ECF No. 24-1)

March 25 Letter = Plaintiffs' March 25, 2016 Letter to Corporation Counsel (ECF NO. 24-1)

2

On August 8, 2015, the Building Department approved the Construction Permit Application. (1AC ¶ 20). On August 25, 2015, Power HRG began work on the Property, work which included removal of the existing wood siding. (1AC ¶ 23).

On August 29, 2015, officials from the Building Department and the Historic Preservation Commission ("HPC") came to the Property and demanded that plaintiffs and Power HRG stop working. (1AC ¶ 24). These officials stated that Power HRG lacked authorization for the work. (1AC ¶ 25). Jersey City police officers also arrived at the Property and, unprovoked, threatened to arrest Fernandes. (1AC ¶ 26). The officials gave no explanation for their demands at the time. (1AC ¶ 24).

Several days later, on September 3, 2015, the Building Department issued a formal "Stop Work Order." (1AC ¶ 27). That Order cited plaintiffs' failure to obtain the HPC's approval before renovating the Property. (1AC ¶ 27). Power HRG stopped its work, leaving three quarters of the Property without siding. (1AC ¶ 28). Because the Building Department also prohibited the plaintiffs from covering their home by other means, the walls remained exposed. (1AC ¶¶ 28, 33).

Fernandes went to City Hall to determine what had happened, but "Jersey City refused to provide any answers to the Plaintiffs and refused to acknowledge that the Building Department gave Power HRG a permit to begin the renovations." (1AC ¶ 30). On or about October 16, 2015, plaintiffs' counsel contacted Jeremey Farrell, corporation counsel for the City of Jersey City, who suggested that plaintiffs' counsel contact attorneys for the Planning Board and the HPC. (1AC ¶ 31). Plaintiffs contacted both attorneys via email, urgently requesting authorization to move forward with construction or at least to allow them to cover their home before the forthcoming winter. (1AC ¶ 32).

On October 19, 2015, James LaBianca, assistant corporation counsel responsible for the HPC, responded to plaintiffs' counsel's email and offered to meet with them. (1AC ¶ 34). On or about October 23, 2015, while they were still trying to arrange a meeting, LaBianca wrote to plaintiffs' counsel, stating,

3

"HP[C] has no objection to your client installing temporary but sufficient, long-lasting preservation measures to protect the property, including the installation of Tyvek or some other proper board material." (1AC ¶ 36). On October 27, 2015, plaintiffs' counsel responded, seeking clarification on what preservation methods were authorized and again requesting a meeting. (1AC ¶ 37). LaBianca never responded to the October 27, 2015 correspondence. (1AC ¶ 38).

In November 2015, plaintiffs took measures to protect the Property from the winter weather, which included covering the Property with plastic tarp. (1AC ¶ 39). "Despite these efforts, the Property suffered substantial damage, including but not limited to water damage throughout the Property." (1AC ¶ 40). At that point, plaintiffs decided to take no further action until warmer weather arrived so that the Property could dry out and they could assess the damage. (1AC ¶ 41).

### B. Alleged Disparate Treatment

Plaintiffs allege that other property owners on their street have made alterations to their properties without obtaining permits or HPC authorization. (1AC ¶ 42). These alterations have included disfavored alterations, such as vinyl siding, and also alterations that are strictly prohibited, such as metal frame windows. (1AC ¶ 42). One couple on their street were allowed to alter their property without HPC approval, allegedly because they "were married by Mayor Fulop and ... were significant supports of Mayor Fulop's campaign." (1AC ¶ 42).

### C. The Plaintiffs' Attendance at Public Meetings

In or around January 2016, plaintiffs began attending City Council meetings and public meetings organized by Mayor Fulop. (1AC ¶ 44). Fernandes spoke at these meetings about the condition of his Property and "the intimidation and disrespectful treatment he and his wife suffered at the hands of" the defendants. (1AC ¶ 45). After one meeting, City Council President Rolando Lavarro "accosted Mr. Fernandes and demanded Mr. Fernandes meet with him the next day." (1AC ¶ 46). On January 29, 2015, Fernandes and his

4

attorney met with Mr. Lavarro, who promised to assist the plaintiffs but never did so. (1AC ¶ 47).

During a February 3, 2016 public meeting, although Fernandes "was not causing any disturbance," police department officers in plain clothes "forcibly grabbed [him] by the arms, lifted him from his feet and illegally ejected [him] from the public meeting at the behest of Mayor Fulop." (1AC ¶¶ 48-50).

Plaintiffs' counsel then sent a February 8, 2016 letter to Jeremey Farrell. (1AC ¶ 51). In that letter, plaintiffs' counsel included an Open Public Record Act ("OPRA") request for the names of the officers who had removed Fernandes from the meeting and an explanation for the removal. (1AC ¶ 51). The letter stated that Fernandes had been physically injured and that both plaintiffs had suffered emotional injury. (1AC ¶ 51). Additionally, the letter stated:

> Mayor Fulop made several untrue statements to the audience in attendance when asked why he had Mr. Fernandes removed. First, it is untrue that my client attended "every single one of these meetings"; as Mayor Fulop stated. It is untrue that my client made a "disruption for twenty to thirty minutes" or "five to ten minutes" at any meeting. The City never "cited for violations" his property. To date, Mr. Fernandes has not received any notice of any violations against his, his wife or their property. The Mayor should recant these slanderous. [sic]
>
> . . . .
>
> Mr. Fernandes has every right to attend any and every public meeting held by Mayor Fulop and he will continue do so. There is no basis in law or in fact to deny him his right to attend these meetings.
>
> Obviously, this situation is extremely distressing to my clients. Not only has the City ignored their attempts to resolve this issue amicably, now it seems the City has an agenda to assassinate the character of Mr. Fernandes and prohibit him from exercising his rights as a citizen of Jersey City. The City has gone to the length of physically assaulting my client to achieve this agenda. Such behavior is unacceptable.

(1AC ¶ 51); (Feb. 8 Letter). The letter requested a meeting with Farrell, but

5

Plaintiffs' counsel did not receive any response. (1AC ¶¶ 51-52).

Plaintiffs eventually received a Use of Force Report, but it provided inadequate information. (1AC ¶¶ 53-55). This prompted plaintiffs' counsel, by a letter dated March 25, 2016, to demand that the City Clerk provide a more adequate response. (1AC ¶ 55). The March 25, 2016 letter also raised grievances about Mayor Fulop's alleged behavior toward Fernandes during a March 14, 2016 public meeting. (1AC ¶¶ 55-56). This letter stated:

> On March 14, 2016, I attended a public meeting in Ward F at the Bethune Center with Carlos Fernandes. There, my client asked the Mayor a question, to which the Mayor again answered that my client is a disgruntled person because his property had been cited for numerous violations by the City, and that the matter is currently the subject of litigation. Again, to date, Mr. Fernandes has not received any notice of any violations against him, his wife or their property. The Mayor knows his statements are untrue. The Mayor must be aware of the true circumstances in this matter because after he made the untrue statements at the February 3, 2016 meeting in Ward A I wrote to you informing you that his statements were untrue.
>
> The Mayor's behavior toward my client is unacceptable. Instead of seriously addressing legitimate issues my client has with the City's handling of abruptly halting construction at his home after the City issued a valid permit for the same construction (and the City's refusal to allow my client to go forward with construction resulting in significant damage to his property), the Mayor is waging a smear campaign against my client in an attempt to minimize his claims against the City.

(1AC ¶ 56); (March 25 Letter). There has been no response to this letter. (1AC ¶ 57). Plaintiffs claim that Fernandes did not attend all the public safety meetings and did not cause a disruption. (1AC ¶ 58).

The February 3, 2016 and March 14, 2016 incidents were videotaped and broadcast on the internet. (1AC ¶ 59). Mayor Fulop was allegedly aware he was being videotaped when he made his statements and ordered the police to

6

remove Fernandes. (1AC ¶ 59). Fernandes alleges that these incidents caused him to lose clients and have diminished his business substantially. (1AC ¶ 60).

### D. The Tort Claim Notice and Complaint

On or around November 25, 2015—after the work had been shut down and the Property had sustained damage, but before the plaintiffs began attending public meetings—plaintiffs filed a Tort Claim Notice ("TCN"). (1AC ¶ 43). On or about April 18, 2016, plaintiffs' counsel received a response to the TCN from Jersey City, which disclaimed liability. (1AC ¶ 61).

On September 22, 2016, the plaintiffs filed a civil complaint in the Superior Court of New Jersey, Law Division, Hudson County. (ECF No. 1). The defendants removed the action to this Court on October 24, 2016. (*Id.*). The original complaint contained six counts—four under 42 U.S.C. § 1983 and two under state tort law:

- **Count 1:** Violation of the plaintiffs' right to Equal Protection under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983 ("Section 1983") (Compl. ¶¶ 56-66) (*against the City*);
- **Count 2:** Violation of the plaintiffs' right to procedural due process under the Fourteenth Amendment, pursuant to Section 1983 (*id.* ¶¶ 67-76) (*against the City*);
- **Count 3:** Violation of the plaintiffs' First Amendment rights, pursuant to Section 1983 (Compl. ¶¶ 77-82) (*against the City, Mayor Fulop in his individual capacity, and Anthony B. Lewis in his individual and official capacities*)
- **Count 4:** Unlawful seizure and false arrest, in violation of the Fourth Amendment, pursuant to Section 1983. (*Id.* ¶¶ 83-91) (*same parties as Count 3*)
- **Count 5:** Defamation by slander. (Compl. ¶¶ 92-98) (*against Mayor Fulop in his individual capacity*)
- **Count 6:** Negligence. (*Id.* ¶¶ 99-104) (*against the City*)

7

On November 7, 2016, defendants moved to dismiss the complaint. (ECF No. 6). On June 27, 2017, I dismissed Counts 2, 5, and 6. *Fernandes v. City of Jersey City*, No. 16-7789, 2017 WL 2799698 (D.N.J. July 27, 2017). Count 5 was dismissed because the plaintiffs had not stated facts suggesting that they had suffered an economic or pecuniary loss. *Id.* at *18.

On August 16, 2017, plaintiffs filed the First Amended Complaint, which contains five counts:

- **Count 1:** Violation of the plaintiffs' right to Equal Protection under the Fourteenth Amendment, pursuant Section 1983. (1AC ¶¶ 63-73). (*against the City*);
- **Count 2:** Violation of the Plaintiffs' First Amendment rights, pursuant to Section 1983. (1AC ¶¶ 74-79) (*against the City, Mayor Fulop in his individual capacity, and Anthony B. Lewis in his individual and official capacities*)
- **Count 3:** Unlawful seizure, in violation of the Fourth Amendment, pursuant to Section 1983. (1AC ¶¶ 80-88) (*same parties as Count 2*)
- **Count 4:** Defamation by slander. (1AC ¶¶ 89-95) (*against Mayor Fulop*)
- **Count 5:** Unauthorized activities of the Building Department, N.J. Stat. § 40:55D-111. (1AC ¶¶ 96-104) (*against the City*)

Counts 1 through 3 correspond to Counts 1, 2, and 4 of the original complaint. (Count 3 of the original complaint has been dropped.) Counts 4 and 5 are amended versions of the original complaint's Counts 5 and 6.

On August 16, 2017, Defendants moved to dismiss Counts 4 and 5 of the First Amended Complaint. (Def. Br.).

## II. LEGAL STANDARD ON MOTION TO DISMISS

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469

8

n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

#### A. Count 4: Defamation by Slander

Defendants claim that the plaintiffs' common law defamation claim should be dismissed for failure to file a Tort Claim Notice ("TCN"). Under the New Jersey Tort Claims Act, when asserting a tort claim against a public entity, "The claimant shall be forever barred from recovering against a public entity or public employee if ... [t]he claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [the next section[2]]...." N.J. Stat. § 59:8-8. The next section provides an exception to the

---

[2]   Section 59:8-9 provides, in full,

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the

9

ninety-day notice rule. It permits a claimant to appeal to a judge of the Superior Court to file a late claim because of "sufficient reasons constituting extraordinary circumstances." N.J. Stat. § 59:8-8.

The New Jersey Torts Claims Act constitutes a limited waiver of the State's sovereign immunity. This waiver is narrowly construed. *See D.D. v. Univ. of Med. & Dentistry of New Jersey*, 61 A.3d 906, 908 (N.J. 2013). The guiding principle is that "immunity from tort liability is the general rule and liability is the exception." *Id.* When adopting this waiver, the New Jersey legislature directed that parties suing public entities "must comply with strict requirements for notifying and suing those entities." *Feinberg v. State Dep't of Envtl. Prot.*, 644 A.2d 593, 596-97 (N.J. 1994). As the Supreme Court of New Jersey has explained, "[t]he Legislature's waiver of sovereign immunity remains a limited one and we are not free to expand that waiver beyond its statutorily-established boundaries. Nor can we permit sympathy for a particular plaintiff to obscure the statutory standard to the point of obliterating it." *D.D.*, 61 A.3d at 922.

Plaintiffs acknowledge that they did not file a TCN within ninety days of the alleged defamation. (Pl. Br. 4). Plaintiffs argue, however, that their claim should be permitted because (1) they should be permitted to file a late claim under Section 59:8-9 and (2) they substantially complied with the TCN by

---

> Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

N.J. Stat. § 59:8-9.

10

sending two letters to corporation counsel. (*Id.* at 4-5). New Jersey courts have recognized substantial compliance as an excuse for failing to meet the ninety-day deadline. *See, e.g., Abel v. City of Atl. City*, 549 A.2d 894 (N.J. Super. Ct. App. Div. 1988); *Dambro v. Union Cty. Park Comm'n*, 327 A.2d 466 (N.J. Super. Ct. Law Div. 1974).

### 1. Extraordinary Circumstances

Plaintiffs will not be permitted to file a late claim under section 59:8-9 because there are not "extraordinary circumstances" justifying the lack of TCN.[3] The "extraordinary circumstances" language was not in the original act. *Beauchamp v. Amedio*, 751 A.2d 1047, 1050-51 (N.J. 2000). It was added by amendment in 1994 to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding' one." *Id.* Express findings about the presence of extraordinary circumstances must be made to justify an untimely claim against a public entity. *Leidy v. Cty. of Ocean*, 942 A.2d 112, 116 (N.J. Super. Cit. App. Div. 2008) (citing *Allen v. Krause*, 703 A.2d 993 (N.J. Super. Ct. App. Div. 1997)).

New Jersey courts have applied a demanding "extraordinary circumstances" test. In *Beauchamp*, a plaintiff sought to file a claim after the ninety-day deadline once she learned that her injuries were permanent. 751 A.2d at 1051. The Supreme Court of New Jersey denied her request to file a late notice because she could have asserted her claim earlier, even though she did not then recognize the full severity of her injuries. *Id.* In *Leidy v. County of Ocean*, a motorcyclist was injured near the border between Ocean County and Monmouth County. 942 A.2d at 114. He submitted appropriate and timely notices to several public entities—but not Monmouth County, the public entity

---

[3] I assume *arguendo* that this Court is authorized to exercise the discretion to excuse late filing that is committed to a "judge of the Superior Court." *See* N.J. Stat. Ann. 59:8-9, quoted in n.2, *supra*. (The plaintiff, of course, did not choose this federal forum; the case arrived here *via* the defendants' notice of removal.) Even assuming that I possess such discretion, for the reasons express in this section I find that the plaintiffs have not submitted facts sufficient to meet the "extraordinary circumstances" exception.

11

that actually maintained the property. *Id.* 115. The Appellate Division found that this mistake did not constitute extraordinary circumstances. *Id.* at 118-19. In *Blank v. City of Elizabeth*, a claimant who did not speak English was not permitted to file an untimely claim because he could have identified the Elizabeth Water Department as the owner of the offending utility valve on which he tripped. 742 A.2d 540 (N.J. 1999).

The circumstances in which courts have permitted plaintiffs to file untimely claims against public entities are limited. Courts have found extraordinary circumstances when a plaintiff was in an induced coma and was not even expected to survive, *Maher v. Cty. of Mercer*, 894 A.2d 100 (N.J. Super Ct. App. Div. 2006); when a state university clinical professor's status as a public employee was obscured by his apparent status as a private physician, *Lowe v. Zarghami*, 731 A.2d 14, 24 (N.J. 1999); or when the original public entity defendants thwarted plaintiff's efforts to ascertain the identity of the public entities responsible. *Feinberg v. State Dep't of Envtl. Prot.*, 644 A.2d 593, 597 (N.J. 1994).

Plaintiffs have not presented facts showing any extraordinary circumstances that would allow this court to excuse the ninety-day deadline. Plaintiffs knew the identity of the alleged tortfeasor and knew of his actions. No extenuating circumstances are identified. Thus, plaintiffs will not be excused from the TCN requirement under section 59:8-9.

### 2. Substantial Compliance

Second, plaintiffs will not be excused from the TCN requirement for their alleged "substantial compliance." As noted above, the legislature requires that parties suing public entities "must comply with strict requirements for notifying and suing those entities." *Feinberg*, 644 A.2d at 596. Under NJ Stat. Ann. § 59:8-4, a TCN must include:

    a. The name and post office address of the claimant;
    b. The post-office address to which the person presenting the claim desires notices to be sent;
    c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

- d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
- e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
- f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

Plaintiffs argue that they should be excused from filing the TCN, alleging that they "substantially complied" with the statute by sending two letters to the City's corporation counsel. (Pl. Br. 4). These letters were filed on February 8, 2016 and March 25, 2016—within the ninety-day deadline. (Feb. 8 Letter); (March 25 Letter).

The question, then, is whether these letters constituted substantial compliance with the TCN requirement. New Jersey courts have permitted plaintiffs who have not submitted TCNs to sue public entities where a defective notice has in fact supplied all or substantially all of the required information:

> Substantial compliance, however, is based on the notion that substantially all of the required information has been given to those to whom the notice should be given and that it has been given in a form which should alert the recipient to the fact that a claim is being asserted against the sovereign. To put it another way, substantial compliance means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required.

*Lameiro v. W. New York Bd. of Ed.*, 347 A.2d 377, 379 (N.J. Super. Ct. Law Div. 1975). Substantial compliance is assessed in relation to the four purposes of the notice requirement:

- (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit;
- (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense;
- (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and

13

> (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.

*Beauchamp*, 751 A.2d at 1052-53 (internal quotation marks omitted) (internal citations omitted) (line breaks added). Thus technical notice defects will not defeat a valid claim where the notice "substantially satisfies the purpose for which the notices of claims are required." *Lebron v. Sanchez*, 970 A.2d 399, 404-06 (N.J. Super. Ct. App. Div. 2009).

In *Lebron v. Sanchez*, a New Jersey court found that a plaintiff "substantially complied" with the TCN requirements by submitting an appropriate letter to the defendants. 970 A.2d 399 (N.J. Super. Ct. App. Div. 2009). The letter included plaintiff's name and address, provided the name and address of her then-attorney, and stated:

> On or about March 8, 1995, claimant Dinesha Mobley was leaving school on her way home, when she attempted to go across the street, claimant was struck by a[n] automobile at or near the 3000 block of River Road. In the city and county of Camden, there was no crossing guard at the time of the accident.

*Id.* at 402. The letter also stated that plaintiff suffered a broken ankle, swollen face, and various other injuries, for which she sought $1,000,000 in damages. *Id.* The Appellate Division found that this letter substantially complied with the enumerated TCN requirements in section 59:8-4 and satisfied the purposes of the notice requirement. *Id.* at 408-09.

Similarly, in *Ewing v. Cumberland County*, a plaintiff's counsel sent notice to Cumberland County that included plaintiff's name; counsel's address; the date of the incident; an allegation that Cumberland correctional officers were involved; a request for preservation of surveillance tapes; and a statement that plaintiff suffered "severe and permanent injuries" as a result of the incident. 152 F. Supp. 3d. 269, 297 (D.N.J. 2015). The court found that plaintiff had substantially complied with the TCN requirements.[4]

---

[4] A third case, *Dambro v. Union County Park Commissioner*, really rested on an estoppel rationale. There, a plaintiff substantially complied with the TCN requirement when he misidentified the public entity responsible because he had been misinformed

14

In the end, *Lebron* and *Ewing* found substantial compliance because the plaintiffs substantially complied with each of the elements listed in section 59:5-4. Courts are not so willing to find substantial compliance with the TCN requirement, however, where required elements are missing. For example, in *Ingram v. Township of Deptford*, a plaintiff filed in municipal court a complaint of excessive force against the township and police department. 911 F. Supp. 2d 289 (D.N.J. 2012). Plaintiff subsequently argued that she substantially complied with the TCN requirements by filing this complaint. *Id.* at 294-96. However, the court found that the complaint did not substantially comply because it did not seek an amount of damages and did not indicate that it was seeking damages. *Id.*; *see also Platt v. Gonzalez*, No. 9-6136, 2011 WL 2413264 (D.N.J. June 9, 2011) (filing an "Internal Affairs Complaint" with the police department does not substantially comply with notice of a civil tort claim where there is no mention of damages).

Here, the plaintiffs' February 8 and March 25 letters do not substantially comply with the notice requirements in section 59:8-4. In their letters, Plaintiffs claim that the Mayor "made several untrue statements" at a public meeting and asked the Mayor to "recant these slanderous [sic]." (Feb. 8 Letter). Fairly read, these letters constitute a protest and a demand for retraction. They do not state an actual or threatened legal claim against the Mayor or the City. Like the plaintiff in *Ingram*, the plaintiffs here do not state that they are seeking damages, or state that they have suffered damages as a result of the

---

by the town's tax assessor. 327 A.2d 466, 468 (N.J. Super. Ct. Law Div. 1974). The plaintiff sent a letter to the tax assessor describing an accident and requesting information about the owner of the property where the accident occurred. *Id.* The tax assessor incorrectly identified the Union County Park Commission as the owner, whereas the Borough of Watchung was the actual owner. *Id.* That plaintiff was permitted to file a late claim because his failure was based on the tax assessor's error. *Id.* at 470. "The law should not permit a municipality to insulate itself from possible tort liability by the mistake or inadvertence of its employee[s]." *Id.* The court found that the plaintiff had substantially complied with the both the substance and goals of the TCN's notice requirements.

alleged defamation. In short, these letters do not constitute notice of a claim of defamation against the Mayor.

For this and other reasons these letters do not discharge the four purposes of a notice of claim. They do not provide "substantially all of the required information ... to those to whom the notice should be given ... which [w]ould alert the recipient to the fact that a claim is being asserted against the sovereign." *Lamiero*, 347 A.2d at 379. Defendants' motion to dismiss Count 4 is therefore granted.

### B. Count 5: Unauthorized Activities of the Building Department

Count 5 is a reformulation of a claim from the original complaint. In the original complaint, plaintiffs claimed that Jersey City acted negligently by issuing a permit for construction and then ordering plaintiffs to stop once the siding was removed from their home. (Compl. ¶ 103). That original claim was dismissed based on a New Jersey statute, N.J. Stat. § 59:2-5, which immunizes municipal entities from suit when they issue permits within their authority. That statute provides as follows:

> A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization *where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked.*

*Id.* (emphasis added).

This time, the plaintiffs allege that the Building Department was not acting in a manner authorized by law. Count 5 alleges that the Building Department exceeded the bounds of its authority by issuing the permit. (Pl. Br. 5-7). According to plaintiffs, only the Historic Preservation Commission held this authority. (*Id.*). Thus, the argument runs, the Building Department exceeded its legal authority and loses the protection of the statute.

According to their amended complaint, plaintiffs filed an application with the Building Department on July 20, 2015. (1AC ¶ 19). On August 1, 2015,

16

plaintiffs' neighborhood became a newly designated historic district. (1AC ¶ 16-17). Therefore, starting on August 1, 2015, Jersey City Municipal Ordinance 345-30 governed the issuance of permits in plaintiffs' neighborhood. Ordinance 345-30 provides as follows:

> No permit shall be issued or amended nor shall any construction, alteration, minor alteration, ordinary maintenance and repair or demolition be started on a landmark building nor on any sign, building, structure, object, site or landscape feature within a designated historic district, whether or not a construction permit is required, prior to a filing of an application for review by the Historic Preservation Commission or the issuance of either a Certificate of Appropriateness or a Certificate of No Effect.

Jersey City, N.J., Mun. Code § 345-30. Nevertheless, on August 8, 2015, the Building Department approved the Construction Permit Application. (1AC ¶ 20).

The allegation, then, is that the Building Department lost the authority to issue a permit for plaintiffs after August 1.[5] That allegation is sufficient to get past a motion to dismiss based on the Building Department's immunity. This statute, recall, immunizes departments from suits, but only *"where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked."* N.J. Stat. § 59:2-5. Since (it is alleged) the Building Department was not authorized by law to issue this permit when it issued the permit, it would not enjoy immunity. *Cf. Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment*, 711 A.2d 282 (N.J. 1998) (finding that a Zoning Board exceeded its authority in hearing petitioner's application and certifying his use when the petitioner did not comply with notice requirements).

In their reply brief, defendants argue that the Building Department is also immunized under another New Jersey statute, N.J. Stat. § 59:3-2. This statute covers the discretionary activities of public employees and provides, in

---

[5] The parties do not brief the issue of whether the date of application, the date of issuance, or some other date controls.

17

relevant part, that "[a] public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him." N.J. Stat. § 59:3-2. There are two problems with argument: First, this statute provides immunity for public *employees*, whereas plaintiffs sue a public *entity*. Second, this statute provides immunity when the public employee causes an injury "resulting from the exercise of judgment or discretion *vested in him.*" *Id.* (emphasis added). Since (it is alleged) the Building Department was not authorized to issue this permit as of the date of issuance, it was not vested with this discretion.

Assuming (as I must), the truth of the facts as alleged by the plaintiffs, the defendants' motion to dismiss Count 5 on immunity grounds must be denied.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Count 4 is dismissed without prejudice. The motion to dismiss Count 5 is denied.

An appropriate order accompanies this opinion.

Dated: November 6, 2017

                                                                    _____
                                                                    **KEVIN MCNULTY**
                                                                    **United States District Judge**

18